STATE of Minnesota, Respondent,

v.

C. A., Appellant.

No. 50817.

Supreme Court of Minnesota.

April 17, 1981.

354

Meshbesher, Singer & Spence, Ronald I. Meshbesher, and Carol Grant, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, R. Kathleen Morris, Scott County Atty., Shakopee, for respondent.

SHERAN, Chief Justice.

C.A.[1] appeals from an order granting in part and denying in part his motions for expungement of criminal records in the hands of various governmental officials. The relief appellant requested was wide-ranging and cast in the most general terms: every local or state government record documenting the fact of his arrest, trial and conviction would have been returned, erased or sealed from public view; public officials and employees would have been stopped from divulging these facts. Although we affirm the trial court's denial of the bulk of C.A.'s requests as stated in his motions, we do not imply that relief may never be properly granted.

Appellant does not now stand convicted of the crime which generated the records he wishes to expunge. Appellant had been charged with consensual sodomy, a gross misdemeanor, and convicted by a jury in December of 1977. In connection with this charge and conviction, appellant was temporarily committed to the Minnesota Security Hospital at St. Peter and to the state correctional facility at Stillwater. In December of 1978, we set aside appellant's conviction pursuant to a stipulated agreement between the defense and the state to remand the case to the district court for a new trial. The charges against appellant were subsequently dropped and he was never retried. Appellant had no prior convictions.

Appellant claims that he is entitled to the relief he requests under Minn.Stat. § 299C.11 (1980) as interpreted by this court in *In re R. L. F.*, 256 N.W.2d 803 (Minn. 1977). Appellant has not argued before this court that his motions should be based on inherent powers of courts to remedy serious infringements of constitutional rights, in addition to the statutory authorities of section 299C.11, although this argument was made to the trial court. The court's inherent power to remedy serious infringements of constitutional rights was outlined in *In re R. L. F., id.* at 808. We do not consider

---

1. We grant appellant's request that only his initials, and not his full name, be used in the text of this opinion because of the nature of the issues involved in the case.

this aspect of the court's inherent power in this appeal.

The statute relied upon by appellant reads in full as follows:

299C.11 PRINTS, FURNISHED TO BUREAU OF SHERIFFS AND CHIEFS OF POLICE.

The sheriff of each county and the chief of police of each city of the first, second, and third classes shall furnish the bureau, upon such form as the superintendent shall prescribe, with such finger and thumb prints, photographs, and other identification data as may be requested or required by the superintendent of the bureau, which may be taken under the provisions of section 299C.10, of persons who shall be convicted of a felony, gross misdemeanor, or who shall be found to have been convicted of a felony or gross misdemeanor, within ten years next preceding their arrest. *Upon the determination of all pending criminal actions or proceedings in favor of the arrested person, he shall, upon demand, have all such finger and thumb prints, photographs, and other identification data, and all copies and duplicates thereof, returned to him,* provided it is not established that he has been convicted of any felony, either within or without the state, within the period of ten years immediately preceding such determination.

Minn.Stat. § 299C.11 (1980) (emphasis added).

C.A. twice moved the trial court for an order encompassing the following:[2]

1. "Requiring" the county sheriff "to forthwith return to the defendant all finger and thumb prints, photographs and other identification data, and all copies and duplicates thereof";

2. "Requiring" the county sheriff "and all his agents from disclosing to anyone the fact that the defendant had been arrested and charged";

3. "Forbidding" the county attorney's office, the police department, the state bureau of criminal apprehension (BCA), the clerk of the district court, the Minnesota Security Hospital at St. Peter, the corrections board, and the Minnesota correctional facility at Stillwater "from disclosing to anyone the fact that the defendant had been arrested, charged or brought to trial";

4. "Requiring that all recordation relating to the arrest, complaint, trial, dismissal and discharge of the defendant be expunged from all official records" of the city, county, state of Minnesota and "all other governmental agencies";

5. "Requiring" the clerk of the district court to "seal" the court file "relating to the complaint of the defendant";

6. "Forbidding" the clerk of the district court "and all his agents from disclosing or revealing the contents" of the file "without Court Order";

7. "Requiring" the clerk of the district court to "remove from all index books open to public examination the caption of this case and the name of the defendant as it relates to this case";

8. "Requiring" the county sheriff's office and the bureau of criminal apprehension "to request the Federal Bureau of Investigation to return all the defendant's records transmitted to the FBI in connection with this case, including finger and thumb prints, photographs and other identification data, and all copies and duplicates thereof; and after the receipt thereof requiring" the county sheriff's office and the bureau of criminal apprehension "to return all such data to the defendant";

9. "Requiring" the state security hospital at St. Peter "to return to the defendant its complete file, including all copies thereof, relating to the defendant's hospitalization" in connection with this case;

10. "Requiring" the state correctional facility at Stillwater "to return to the de-

2. In setting forth the components of appellant's motions for expungement we have deleted his reference to a specific county or city and other identifying details. For the sake of clarity we have divided single paragraphs in appellant's motions into more than one paragraph while retaining appellant's choice of words.

fendant its complete file, including all copies thereof, relating to the defendant's incarceration" in connection with this case;

11. "Protecting" the defendant from being adjudged guilty of "perjury or otherwise giving a false statement by reason of his failure" to state the fact of his arrest, complaint or trial "in response to any inquiry made of him for any purpose";

12. A "prohibition of the further transcription of any testimony in the case, or dissemination to any persons of (a) any of the testimony offered at the trial of this case or pre-trial proceedings, and (b) the identity of all witnesses who testified at all proceedings herein, specifically prohibiting the court reporter or any of his agents from providing transcription of any testimony in this proceeding to any person."

■ We. find that the trial court properly concluded that section 299C.11 authorized none of appellant's requests as he made them other than his first one above, the order requiring the sheriff to return to the defendant finger and thumb prints, photographs, other identification data and all copies.[3] The trial court also properly concluded that appellant had not substantiated a serious infringement of constitutional rights justifying the exercise of the court's inherent powers to remedy such infringements.

Our judgment is that the trial court should in all respects be affirmed, given the

record of this case and the manner in which appellant formulated his motions. Nevertheless, it is within the power of the courts to grant broader relief than was had here. For future guidance, we give this explanation of our denial of the major portions of appellant's motions.

■ Our decision in this case is based in part upon the statutory authority to order expungement of criminal records provided by the legislature in section 299C.11 and in part upon the limitations of the inherent authority of courts to issue protective orders. The verb, "to expunge," literally means to destroy or obliterate. Black's Law Dictionary 522 (5th ed. 1979). But the kind of relief granted by statutory or judicial authority which has been called "expungement" is not limited to destruction of records. Such relief may consist of the return of the records to the person seeking relief, or the sealing of the records, subject to reopening only upon court order, rather than destruction.[4] The statute in issue in this appeal, Minn.Stat. § 299C.11 (1980), which provides for the return of some criminal records, could be considered to be a kind of "expungement."

Beyond the outlines of statutory authority, courts have inherent authority to grant relief which might be called expungement, in some kinds of cases. *See In re R. L. F.*, 256 N.W.2d 803 (Minn.1977).[5] In *In re R. L.*

3. It was also proper for the trial court to conclude that section 299C.11 is applicable to a person in the position of the appellant. Section 299C.11 may be invoked "[u]pon the determination of all pending criminal actions or proceedings in favor of the arrested person." Minn.Stat. § 299C.11 (1980). In appellant's case, charges against him were dismissed after his first conviction was set aside and a new trial ordered pursuant to a stipulation between appellant and the state. We find this to be a determination in appellant's favor. *See In re R. L. F.*, 256 N.W.2d 803 (Minn.1977), where we found a pre-trial dismissal of charges after a successful motion to suppress evidence to be a determination in favor of the accused. We have also held that a dismissal of charges after a guilty plea and a stay of imposition of sentence is not a determination of proceedings in favor of the accused within the meaning of section 299C.11. *City of St. Paul v. Froysland,*

310 Minn. 268, 246 N.W.2d 435 (1976). Such is not the case here.

4. *See* Gough, *The Expungement of Adjudication Records of Juvenile and Adult Offenders: A Problem of Status*, 1966 Wash.U.L.Q. 147, 149–50 [hereinafter cited as Gough]; Comment, *Criminal Procedure: Expunging the Arrest Record When There is No Conviction*, 28 Okla.L.Rev. 377, 386 (1975).

5. In *In re R. L. F.*, 256 N.W.2d 803 (Minn.1977), we surveyed the range of views announced by state and federal courts toward inherent power to grant expungement to remedy serious infringements of constitutional rights. We found that a "majority of jurisdictions deciding this issue hold that it is within the inherent power of the court to order expungement of criminal records." *Id.* at 807–08. *But see District of Columbia v. Hudson*, 404 A.2d 175, 181 (D.C.

*F.* we discussed one aspect of the inherent authority of courts, the power to fashion relief necessary to prevent serious infringement of constitutional rights. 256 N.W.2d at 808. There we wrote:

> In all cases where statutes so provide, the court is clearly empowered to order expungement; in cases to which our statutory scheme does not extend, the court's inherent power is limited to instances where the petitioner's constitutional rights may be seriously infringed by retention of his records.

*Id.* But it has not been argued before this court that there has been a serious infringement of appellant's constitutional rights.

In this case we must consider yet another aspect of inherent authority held by courts.[6] The petitioner has made numerous requests affecting court records and agents and employees of the court system. Our consideration in *In re R. L. F.* was focused on an interpretation of section 299C.11 and inherent authority to remedy serious violations of constitutional rights. We were not there presented with the issue, to the degree reflected here, of inherent power enabling courts to grant relief when it is necessary to the performance of their unique judicial functions.

■ The inherent authority of the courts to control the performance of judicial functions is well established. *State v. Osterloh,* 275 N.W.2d 578, 580 (Minn.1978); *In re Clerk of Lyon County Courts' Compensation,* 308 Minn. 172, 176, 180–81, 241 N.W.2d 781, 784, 786 (1976); *In re Disbarment of Greathouse,* 189 Minn. 51, 55, 248 N.W. 735, 737 (1933). "Inherent judicial power governs that which is essential to the existence, dignity, and function of a court because it is a court." 308 Minn. at 176, 241 N.W.2d at 784. Part of that function is to control court records and agents of the court in order to reduce or eliminate unfairness to individuals, even though the unfairness is not of such intensity as to give a constitutional dimension.

■ Under appropriate circumstances, this power extends to the issuance of expungement orders affecting court records and agents of the court. "The test to be applied in these cases is whether the relief requested by the * * * aggrieved party is necessary to the performance of the judicial function as contemplated in our state constitution." 308 Minn. at 181, 241 N.W.2d at 786. Where denial of a constitutional right is not involved the court must decide whether expungement will yield a benefit to the petitioner commensurate with the disadvantages to the public from the elimination of the record and the burden on the court in issuing, enforcing and monitoring an expungement order. An order based on inherent authority of the courts will not be issued in a pointless attempt to confine the dissemination of facts already widely known and recorded in the public sector.

■ Because this authority of the court extends only to its unique judicial func-

1979); Note, *The Rights of the Innocent Arrestee: Sealing of Records Under California Penal Code Section 851.8,* 28 Hastings L.J. 1463, 1470 (1977) [hereinafter cited as Note, *The Innocent Arrestee*]; Comment, *Criminal Procedure: Expungement of Arrest Records,* 62 Minn.L.Rev. 229, 233–34 (1978) [hereinafter cited as Comment, *Criminal Procedure*].

**6.** Issues of statutory and inherent powers to expunge criminal records have recently been the subject of many court cases and much commentary. *See, e. g., United States v. Linn,* 513 F.2d 925 (10th Cir.), *cert. denied,* 423 U.S. 836, 96 S.Ct. 63, 46 L.Ed.2d 55 (1975): *Crow v. Kelley,* 512 F.2d 752 (8th Cir. 1975); *Urban v. Breier,* 401 F.Supp. 706 (E.D.Wis.1975); *United States v. Dooley,* 364 F.Supp. 75 (E.D.Pa.1973); *Loder v. Municipal Court for San Diego Judi-*cial Dist., 17 Cal.3d 859, 553 P.2d 624, 132 Cal.Rptr. 464 (1976), *cert. denied,* 429 U.S. 1109, 97 S.Ct. 1143, 51 L.Ed.2d 562 (1977); *State v. Anonymous,* 36 Conn.Sup. 9, 409 A.2d 150 (1980); *District of Columbia v. Hudson,* 404 A.2d 175 (D.C.1979); *Stephens v. Van Arsdale,* 227 Kan. 676, 608 P.2d 972 (1980); *State ex rel. Curtis v. Crow,* 580 S.W.2d 753 (Mo. 1979); *In re Application of Jascalevich,* 169 N.J.Super. 392, 404 A.2d 1239 (1979); *People v. A.,* 99 Misc.2d 295, 415 N.Y.S.2d 919 (1978); Gough, *supra* note 4; Note, *The Innocent Arrestee, supra* note 5; Comment, *Criminal Procedure, supra* note 5; Note, *Retention and Dissemination of Arrest Records: Judicial Response,* 38 U. of Chi.L.Rev. 850 (1971). We find that none of these sources directly confronts the issue presented in this case.

tions, courts must proceed cautiously in exercising that authority in order to respect the equally unique authority of the executive and legislative branches of government over their constitutionally authorized functions. *State v. Osterloh*, 275 N.W.2d at 580; *In re Clerk of Lyon County Courts' Compensation*, 308 Minn. at 181, 241 N.W.2d at 786; *In re Disbarment of Greathouse*, 189 Minn. at 54–55, 248 N.W. at 737. While perhaps not controlled by legislative expression of public policy pertaining to access to governmental records, the exercise of inherent authority must be delineated in such a way as to accommodate those policies where appropriate. *Cf. Loder v. Municipal Court for San Diego Judicial Dist.*, 17 Cal.3d 859, 553 P.2d 624, 132 Cal.Rptr. 464 (1976), *cert. denied*, 429 U.S. 1109, 97 S.Ct. 1143, 51 L.Ed.2d 562 (1977).

The state legislature has provided for the classification, collection, security and dissemination of information by government in the Minnesota government data practices act, Minn.Stat. §§ 15.1611–.1698 (1980).[7] Many of the provisions of the act apply to records which are potentially the objects of expungement orders. Dissemination of these records may already be limited by the act, obviating the necessity of court·orders. The act defines "arrest information" as including name, age, address, nature of the charge, time and place of arrest, arresting agency, and place of incarceration. *Id.* § 15.162, subd. 1a. Such arrest information is classified as publicly available. *Id.* § 15.1621, subd. 1. Data "contained on incident complaint reports, variously called logs or dockets, comprising a chronological record of events" are publicly available, unless classified as private or confidential under other sections of the act. *Id.* § 15.1695, subd. 1(b). Other types of records generated by law enforcement agencies are not classified by the legislature as publicly available. Information, other than arrest information, "collected by a * * * criminal investigative agency as part of an active investigation undertaken for the purpose of

the commencement of a legal action" is classified as "confidential data on individuals." *Id.* § 15.162, subd. 2a(b). As such, it may be disseminated only to legally authorized individuals or agencies without the consent of the subject of the information. *Id.* § 15.163, subd. 4(b)–(d). Law enforcement agencies are legally authorized to obtain this information. *See id.* § 299C.11–.15 (1980); Op.Minn.Atty.Gen. 985f, at 8 (Oct. 20, 1969).

Appellant contends that inherent judicial power need not be exercised in this case and proposes that section 299C.11 be radically construed so as to encompass each part of his motions. We have determined that section 299C.11 "implicitly includes * * * arrest records," although it specifically mentions only finger and thumb prints, photographs, other identification data, and duplicates of these. *In re R. L. F.*, 256 N.W.2d at 805. We have also held that section 299C.11, which by its terms applies to the sheriff, police and the BCA, is also "applicable to all entities which gather this information for the BCA." *Id.* In order to effectuate the statutory requirement of the return of "all such" finger and thumb prints, photographs and other identification data, all departments or agencies which collect, keep and report the information described must be within the reach of orders to return such data under section 299C.11, even though they are not specifically listed in the statute. *Id.*

■ Appellant would have this court include as arrest records "*any* portion of a file generated before conviction or after," citing Comment, *Criminal Procedure, supra* note 5, at 230 n.11 and Note, *The Innocent Arrestee, supra* note 5, at 1469. Appellants' Brief and Appendix at 9. As we noted in *City of St. Paul v. Froysland*, 310 Minn. 268, 275 n.5, 246 N.W.2d 435, 439 n.5 (1976), section 299C.11 does not apply to "*all* records *relating* to arrest" (emphasis added). We are not now prepared to give a delimit-

---

7. The basic components of the act were described in *Minnesota Medical Ass'n v. State*, 274 N.W.2d 84, 87–89 (Minn.1978).

ing definition of "arrest records" which must be returned under section 299C.11. We find some guidance in the definition of "arrest information" given in Minn.Stat. § 15.162, subd. 1a (1980),[8] although that definition is not necessarily all-inclusive. The reach of section 299C.11 simply does not extend to the entirety of appellant's motions.

We now turn to an examination of each of appellant's requests. We do not consider whether any of the requested orders could be granted under the court's inherent power to remedy serious violations of constitutional rights; nor do the limitations on the reach of orders outlined below necessarily apply to orders in the case of infringements of constitutional rights.

 A major flaw pervading appellant's motions is the failure to identify with specificity the documents and individuals he wishes to be subject to court order. The petition for relief should specify *by name* the person to be served with the court order. Records and documents to be expunged or controlled should be described specifically by location, file number, book and page number, or similar description.

(1) Appellant requested that the sheriff be required to return to him finger and thumb prints, photographs and other identification data. This the trial court granted as being specifically required under section 299C.11, and we have affirmed.

(2) Appellant next requested an order forbidding the sheriff and his agents from disclosing the fact of appellant's arrest and charge. This was not granted by the trial court. While it is quite true that the issuance of such an order is not authorized by section 299C.11, it is within the court's inherent power to control the use of its internal records. We upheld the issuance of such an order in *In re R. L. F.*, 256 N.W.2d 803 (Minn.1977). Appellants' Brief and Appendix at A–5 to –6, *id.* (trial court's order).

Such an order must specify the names of the persons subject to the order, rather than the category or office.

 A sheriff is within the purview of the inherent power of the court to control internal processes because the sheriff often acts as an officer of the court. It is part of the duties of the sheriff, whose employees include bailiffs and jailers, to serve court processes, take charge of county jails, and attend upon the terms of the district court. Minn.Stat. §§ 387.03, .11, .13 (1980).

Had an order not to disclose been granted by the trial judge in this case we would not have reversed, at least in the absence of objection by an aggrieved person claiming a protectable interest in the information, such as a newspaper reporter. *See Northwest Publications, Inc. v. Anderson*, 259 N.W.2d 254, 256 (Minn.1977).

(3) We next confront appellant's request to forbid a vast array of public officials from disclosing the fact of the appellant's arrest, charge and trial. Appellant wishes the order to include the county attorney's office, the police department, the BCA, the district court clerk, the Minnesota Security Hospital at St. Peter, the state board of corrections, and the Minnesota correctional facility—Stillwater. Some of these officials or institutions would have been within the reach of the court's inherent power to control its internal processes, had appellant's requests been phrased with the requisite specificity. Without question, the clerk of the district court might be subject to such an order in the rare appropriate case.

 It would also be within the power of the court to issue an order applicable to the county attorney or attorneys. The county attorney, like the sheriff, is an officer of the court insofar as he or she represents the county in the trial or matter in question. *See Minn.Stat. § 388.051 (1980).*

---

8. Minn.Stat. § 15.162, subd. 1a (1980), states in relevant part:

"Arrest information" shall include (a) the name, age, and address of an arrested individual; (b) the nature of the charge against the arrested individual; (c) the time and place of the arrest; (d) the identity of the arresting agency; (e) information as to whether an individual has been incarcerated and the place of incarceration.

Named individuals in police departments, officials in charge of correctional facilities, or members of the board of corrections could be subject to orders not to disclose only to a limited extent. Police departments are components of town or city governments, which are political subdivisions defined by the legislature. *See id.* §§ 365.15, 415.01. Correctional facilities and the board of corrections, as well as the BCA, are all part of the executive branch of state government. *See id.* §§ 15.06, 241.01, 244.08, 299C.01.

Nevertheless, courts may have authority derived from section 299C.11 to order persons responsible for reporting information relating to an arrest, charge, trial, incarceration or release to the BCA not to disclose that information. *In re R. L. F.*, 256 N.W.2d 803 (Minn.1977). Police departments, along with sheriffs, are required to report information to the BCA under Minn. Stat. §§ 299C.11–.12 (1980). Correctional facility officials and the board of corrections report to the BCA under section 299C.14. We emphasize that personnel in these departments and agencies who have knowledge of these facts, but who are not personally required to report them to the BCA, may not be the subjects of court orders not to disclose as contemplated here.

It is beyond the inherent power of the court to regulate judicial functions to command officials at the Minnesota Security Hospital at St. Peter not to disclose information. The hospital is subject to the executive branch of government. *See id.* §§ 245.03, 253.20. We see nothing in section 299C.11 to indicate that the hospital is part of the line of communication to the BCA.

(4) The next request of appellant from our list above is illustrative of the lack of specificity that has flawed most subparts of his motions. Appellant requests that "all recordation" relating to his arrest, charge and trial, in "all official records" of the city, county, state and "all other" governmental agencies be expunged. Although we note that such broadcast orders have been issued, *see State ex rel. Curtis v. Crow*, 580 S.W.2d 753 (Mo.1979), we find it inappropriate to do so.

(5) Appellant requests the court to order the clerk of court to seal the district court file. The clerk is subject to the inherent power of the court to control its internal records. We find a request for sealing of a file to be a reasonable one, which will be granted upon the right kind of showing. *See Sullivan v. Murphy*, 478 F.2d 938 (D.D. C.), *cert. denied*, 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973); *District of Columbia v. Hudson*, 404 A.2d 175 (D.C.1979). Indeed, a provision for the sealing of court files was part of a model expungement order circulated at a recent meeting of the Minnesota District Judges Association.

Sealing of court records is preferable to destruction because a sealed file may be reopened by order of a court upon a showing of good cause. One court suggested that a sufficiently compelling need would be "other civil litigation concerning the particular arrest or the discovery of additional evidence." *Id.* at 181; *cf. State v. Schilling*, 270 N.W.2d 769 (Minn.1978). Frequently, minutes of court reporters are very useful in subsequent civil proceedings.

(6)–(7) Appellant's sixth and seventh requests again ask the court to govern its own internal records and processes by forbidding the district court clerk from disclosing the contents of a court file without court order and requiring the clerk to remove the caption of the case from the docket books of the court. Under proper circumstances, such an order might be granted.

(8) Appellant has moved the court to order the sheriff to request from the FBI the return of appellant's finger and thumb prints, photographs or other identification data which might have been sent. This is a legitimate request which may be granted by the courts under section 299C.11 in order to effectuate the requirement of that section that "all" of the enumerated material be returned. It has been shown that the FBI will comply with the request of law enforcement officials to return information.

**362**

*Menard v. Saxbe,* 498 F.2d 1017, 1022 (D.C. Cir.1974); *Crow v. Kelley,* 512 F.2d 752, 755 (8th Cir. 1975); *see* Gough, *supra* note 4, at 188.

(9) Appellant's next request affects the Minnesota Security Hospital at St. Peter. For the reasons given above, the security hospital is not subject to the inherent power of the courts to regulate judicial records. Moreover, we note that medical records of prisoners are to a degree confidential under Minn.Stat. § 144.651 (1980), although the confidentiality may be infringed for valid security reasons. *See Hines v. Anderson,* 439 F.Supp. 12, 21 (D.Minn.1977).

 (10) The next request, pertaining to the appellant's file at the state correctional facility at Stillwater, cannot be granted, also for the reasons stated above. The correctional facility is a component of the executive branch of government and, as such, is not generally subject to the court's inherent power to control judicial records.

(11) Appellant requests that the trial court declare that he is free to deny or omit mention of the fact of his arrest, charge and trial without running afoul of statutes prohibiting the making of false statements or prohibiting perjury. Such protection is specified in our statute providing expungement of records of persons convicted of sale or possession of a controlled substance. Minn.Stat. § 152.18, subd. 2 (1980). As a practical matter, petitioners whose criminal records are otherwise expunged or sealed would very seldom be prosecuted for perjury or making false statements. In the absence of any likelihood of prosecution, the type of order requested here would be premature.

(12) Appellant's final request is that the court prohibit transcription or dissemination of court proceedings and the names of witnesses at the proceedings. Transcription cannot be prohibited. Dissemination of transcripts might, of course, be curtailed because the notes of the court reporter are to be placed in the district court file, Minn.

Stat. § 486.03 (1980), and the file may be sealed under appropriate circumstances. The broad prohibition requested here lacks sufficient direction and delineation.

We appreciate the general concern which spurred appellant to seek the far-reaching orders we have discussed. Under some circumstances, the fact that a person's name rightly or wrongly is contained in police files may be annoying, prejudicial or damaging to him or her.[9] After carefully reviewing the breadth of the requests made by appellant, our judgment is that the trial court should be and is affirmed, without prejudice to the appellant in seeking further relief within the guidelines set forth in this opinion.

Affirmed.

---

**9.** *Menard v. Saxbe,* 498 F.2d 1017, 1024 (D.C. Cir.1974); *United States v. Dooley,* 364 F.Supp. 75, 77 (D.C.Pa.1973); Note, *Retention and Dis-*

*semination of Arrest Records: Judicial Response, supra* note 6, at 853.